UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMY JO DISOTELL,

                               Plaintiff,

v.                                                               7:16-CV-0480
                                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                        HOWARD OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.            ARIELLA ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 13, 14.).

      Currently before the Court, in this Social Security action filed by Amy Jo Disotell ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 10, 11.)  For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.	**RELEVANT BACKGROUND**

  A.	**Factual Background**

Plaintiff was born in 1971.  (T. 145.)  She completed the eighth grade.  (T. 150.)  Generally, Plaintiff's alleged disability consists of scoliosis, blood disorder, poor vision, and depression.  (T. 149.)  Her alleged disability onset date is May 10, 2010. (T. 57.)  Her date last insured is June 30, 2015.  (T. 160.)  She previously worked as a cook, waitress, and dishwasher.  (T. 150.)

  B.	**Procedural History**

On June 25, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 56.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On October 24, 2013, Plaintiff appeared before the ALJ, Marie Greener.  (T. 36-55.)  On May 5, 2014, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 17-33.)  On February 24, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

  C.	**The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 22-29.)  First, the ALJ found that Plaintiff met the insured status

requirements through June 30, 2015 and Plaintiff had not engaged in substantial gainful activity since May 10, 2010. (T. 22.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with scoliosis and degenerative disc disease of the thoracic spine. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work and occasionally climb, balance, stoop, kneel, crouch, and crawl. (T. 25.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 27-29.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was not supported by substantial evidence because of errors in the ALJ's weighing of the opinion evidence provided by consultative examiner Elke Lorensen, M.D., Nurse Practitioner Lalone, and Nurse Practitioner Pyatigorskaya. (Dkt. No. 10 at 6-14 [Pl.'s Mem. of Law].)[2] Second,

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

[2]    The record contains treatment notations and a medical source statement completed by Sarah Lalonde, Family Nurse Practitioner. A verification search with the New York State Office of the Professions reveals a nurse practitioner with the name, Sarah Elizabeth Lalonde. http://www.nysed.gov/COMS/OP001/OPSCR1 (last visited July 27, 2017). There are no registered nurse practitioners in the State of New York named Sarah Lalone. In the transcript Nurse Lalonde's name

3

and lastly, Plaintiff argues the credibility determination is not supported by substantial evidence. (*Id.* at 14-16.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly weighed the medical opinion evidence in assessing Plaintiff's RFC. (Dkt. No. 11 at 11-19 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility assessment was supported by substantial evidence. (*Id.* at 19-22.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

---

appears as Lalonde and Lalone. For the sake of continuity, Nurse Lalonde will be referred to as she is by the ALJ and the parties, Nurse Lalone.

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

   (1) whether the claimant is currently engaged in substantial gainful activity;
   (2) whether the claimant has a severe impairment or combination of

5

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's Weighing of the Medical Evidence and RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)[3]. In formulating an RFC, the ALJ will base her determination on "all of the relevant medical and other evidence" in the record. *Id.* at §§ 404.1545(a)(3), 416.945(a)(3). The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. *Id.* at §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Plaintiff asserts that the ALJ erred in weighing the medical opinion evidence in the record, and therefore the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 10 at 6-14 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that in formulating her RFC determination, the ALJ did not properly consider and weigh the

---

[3] Effective March 27, 2017, 20 C.F.R. §§ 404.1545, 416.945 have been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

opinions of consultative examiner Dr. Lorensen, Nurse Lalone, and Nurse Pyatigorskaya. (*Id.*)

### i.) Dr. Lorensen

On October 18, 2012, Dr. Lorensen performed an internal medical examination and provided a medical source statement. (T. 242-245.) Plaintiff reported that she cooks three times a week, cleans once a week, does laundry twice a week with help, and shops once a week with help. (T. 242.) Plaintiff reported she showers and dresses with help; however, Dr. Lorensen observed that Plaintiff was able to undress for the examination and dress after the examination without a problem. (T. 243.)

On examination Dr. Lorensen observed that Plaintiff was in no acute distress, had a normal gait, could walk on her toes, and could not walk on her heels. (T. 243.) Plaintiff informed Dr. Lorensen she could not squat. (*Id.*) Dr. Lorensen observed that Plaintiff needed no help getting on and off exam table and was able to rise from a chair without difficulty. (*Id.*)

Dr. Lorensen noted Plaintiff had full range of motion in her cervical spine. (T. 244.) The doctor observed Plaintiff had no scoliosis, kyphosis, or abnormality in her thoracic spine. (*Id.*) Dr. Lorensen observed on examination that Plaintiff's lumbar spine had flexion of 30 degrees, extension of 10 degrees, lateral flexion of 20 degrees to the right and 15 degrees to the left, and rotation of 15 degrees. (*Id.*) Dr. Lorensen noted Plaintiff had forward elevation and abduction of both shoulders of 130 degrees. (*Id.*) Plaintiff had full range of motion in her forearms and wrists. (*Id.*) Dr. Lorensen observed Plaintiff had intact hand and finger dexterity and full grip strength. (*Id.*)

In a medical source statement Dr. Lorensen opined Plaintiff had "marked restrictions for bending, lifting, and reaching." (T. 244.) She further opined Plaintiff had "moderate restrictions for pushing and pulling." (*Id.*) Dr. Lorensen did not specifically opine to Plaintiff's ability to sit, stand, and/or walk. (*Id.*)

In formulating her RFC determination, the ALJ afforded Dr. Lorensen's opinion "significant weight." (T. 27.) However, the ALJ rejected the doctor's opinion that Plaintiff had marked restrictions for reaching and moderate restrictions for pushing and pulling. (*Id.*) The ALJ reasoned that such restrictions were "not consistent" with the overall medical evidence, including Dr. Lorensen's physical examination which revealed full range of motion in the cervical spine, full strength in the upper and lower extremities, no sensory deficits, no muscle atrophy, and intact hand and finger dexterity with full grip strength. (*Id.*)

Plaintiff argues the ALJ's reasons for rejecting Dr. Lorensen's limitations were not fully supported by the evidence because the ALJ failed to recognize Dr. Lorensen's findings that Plaintiff had decreased range of motion in her lumbar spine and shoulders. (Dkt. No. 10 at 7-8 [Pl.'s Mem. of Law].) Plaintiff also argues Dr. Lorensen's limitations were supported by other evidence pertaining to Plaintiff's back impairment. (*Id.* at 8.)

Here, the ALJ's determination to not adopt Dr. Lorensen's opinion that Plaintiff had moderate and marked limitations was proper and supported by substantial evidence in the overall record. As an initial matter, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013.) Further, an RFC determination need not align with a

specific medical opinion, but may be based on the record as a whole. *Monroe v. Comm'r of Soc. Sec.,* No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017).

First, the ALJ properly concluded that Dr. Lorensen's marked restrictions in reaching and moderate restrictions in pushing/pulling were not supported by the overall record. Plaintiff did not allege any limitation in her ability to reach and no treating source opined that Plaintiff was limited in her ability to reach. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir. 1983) (An ALJ "is entitled to rely not only on what the record says, but also on what the record does not say."). To be sure, the record did contain complaints of neck pain. In a notation from 2011, Plaintiff reported neck and shoulder pain that caused headaches, but noted no other limitations. (T. 345.) Plaintiff reported at that time medication controlled her pain well. (*Id.*) Multiple treatment records from July 2013 to December 2013 contained the identical notation that Plaintiff complained of "chronic neck pain, minor compare[d] to her back." (T. 309, 312, 315, 318, 321, 324, 327.) Despite notations of neck pain, overall, Plaintiff received medical treatment primarily for her lumbar back pain and the majority of treatment notations were silent regarding any complaints of neck/shoulder pain or upper extremity limitations, or objective observations of the neck/shoulders or upper extremity limitations.

Second, the ALJ properly rejected Dr. Lorensen's marked and moderate limitations because they were not supported by Dr. Lorensen's findings on examination. (T. 27.) Plaintiff argues that evidence of an inability to walk on her heels, inability to squat, and limited range of motion in her back supported Dr. Lorensen's reaching limitations. (Dkt. No. 10 at 7-8 [Pl.'s Mem. of Law].) However, as stated by Defendant,

9

it is not clear how these findings were consistent with marked limitations in reaching and moderate limitations for pushing and pulling. (Dkt. No. 11 at 13 [Def.'s Mem. of Law].)

Despite limitations in her lumbar spine, the ALJ reasonably concluded that Dr. Lorensen's findings on examination, which revealed full range of motion in the cervical spine, full strength in the upper and lower extremities, no sensory deficits, no muscle atrophy, and intact hand and finger dexterity with full grip strength, did not support her opinion that Plaintiff had marked and moderate limitations. *See Medick v. Colvin*, No. 5:16-CV-344, 2017 WL 886944, at *8 (N.D.N.Y. Mar. 6, 2017) ("although Dr. Lorensen's examination revealed some limitations in plaintiff's movement of her lumbar spine as well as four trigger points, it was reasonable for the ALJ to conclude that Dr. Lorensen's opined marked and moderate-to-marked limitations [in lifting and reaching] were inconsistent with the plaintiff's less severe symptoms and signs that she demonstrated during the examination"). Because Dr. Lorensen's moderate and marked limitations were not supported by his examination nor the objective evidence in the record, the ALJ did not err in rejecting these portions of Dr. Lorensen's opinion.

### ii.)     Nurses Lalone and Pyatigorskaya

ALJs are not required to afford the same level of deference to the opinions of "other sources," including nurse practitioners, as they are to the opinions of "acceptable medical sources" like physicians and psychologists. *See* 20 C.F.R. §§ 404.1502, 404.1513(a),(d); 416.913(a),(d) ; SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "[W]hile the ALJ is certainly free to consider the opinions of ... 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*,

298 F. App'x. 105, 108 (2d Cir. 2008). Nonetheless, "other source" opinions are important, and ALJs are required to evaluate them in some depth. SSR 06-03p, 2006 WL 2329939, at *3 ("Opinions from these [other] sources, who are not technically deemed 'acceptable medical sources' under our rules, ... should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."); see Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (stating opinion of nurse practitioner who treated claimant on regular basis entitled to "some extra consideration"). In evaluating opinions of "other sources," the ALJ should use the same factors as are used to evaluate the opinions of "acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *4. These factors, as outlined herein, include the length of the treatment relationship, the frequency of evaluation, the degree to which the medical source provided evidentiary support for his or her opinions, the opinions' consistency with the record as a whole, and any other relevant factors. *Id.*; see 20 C.F.R. §§ 404.1527(c), 416.927(c); Evans v. Colvin, 649 F. App'x. 35, 38-39 (2d Cir. 2016).

On September 5, 2012, Nurse Lalone completed a medial source statement for the New York State Office of Temporary and Disability Assistance. (T. 221-232.) Nurse Lalone indicated that Plaintiff was first seen on April 4, 2012 with complaints of back pain and although her exam was "entirely normal," Plaintiff had pain on palpation of her back. (T. 222.) She stated Plaintiff did not complete physical therapy, she had "good results" from medication, her prognosis was good if she continued with physical therapy and shoe inserts, and her depression was "well controlled." (*Id.*) Nurse Lalone indicated Plaintiff's laboratory findings were normal and an X-ray indicated scoliosis. (T.

226.) Nurse Lalone stated Plaintiff was able to perform all activities of daily living ("ADLs") and drove a car. (T. 229.) Nurse Lalone did not complete the section of the form regarding Plaintiff's ability to perform specific work related physical activities. (T. 230-231.) She indicated that she could not provide a medical opinion regarding Plaintiff's ability to do work related activities. (T. 232.)

The ALJ gave "significant weight" to the "observations and comments" in Nurse Lalone's 2012 statement due to her "treatment relationship" with Plaintiff. (T. 27.) Plaintiff argues the ALJ erred in affording Nurse Lalone's statement significant weight because Nurse Lalone was not a treating source and her comments were not consistent with the evidence in the record or specific enough to be useful in assessing Plaintiff's functioning. (Dkt. No. 10 at 9-10 [Pl.'s Mem. of Law].)

To be sure, Nurse Lalone's status as a "treating source" is questionable based on the record. However, any error the ALJ may have made in affording Nurse Lalone's statements "significant weight" was harmless. As indicated by the ALJ, Nurse Lalone declined to provide specific functional limitations. (T. 26.) Nurse Lalone essentially stated that Plaintiff's prognosis was good and her conditions, physical and mental, were well controlled with medication. Her observations, which the ALJ afforded significant weight, were supported by the overall record.

Indeed, the record indicated that Plaintiff's pain was well controlled with medication. Plaintiff reported to her physical therapist on June 22, 2012, that although she felt her medication did not work very well, she currently did not have pain due to her medication. (T. 201.) On June 25, 2012, Plaintiff reported to her physical therapist that her pain level was 0/10 due to pain medication; however, she felt "overly relaxed" and

thought she was taking "too much" medication. (T. 202.) On June 25, 2013, Plaintiff reported her pain was mostly controlled with medication. (T. 286.) In June of 2013, Plaintiff reported improved activity with physical therapy. (T. 329.) In July, August, September, October, November of 2013, Plaintiff reported that her pain medication allowed her to maintain her activities and social life. (T. 312, 315, 318, 321, 324, 327.) In November of 2013, Plaintiff's dosage of pain medication was decreased. (T. 312-313.) Therefore, Nurse Lalone's 2012 statement was consistent with the overall record, and any error the ALJ may have made in affording her observations "significant weight" based on her perceived status as a treating provider, was harmless.

Plaintiff also received treatment at a pain management clinic in Potsdam, NY. (T. 308.) Nurse Pyatigorskaya provided Plaintiff's primary care. Nurse Pyatigorskaya did not complete a medical source statement; however, on October 3, 2013, she wrote on a prescription note pad that Plaintiff had chronic back pain secondary to facet joint disease and therefore "her tolerance for prolonged sitting [was] limited to 15-20 [minutes] and standing for 10-15 [minutes]." (T. 284.) Treatment notations dated October 3, 2013, indicated that Plaintiff requested a medical excuse note because she was required to attend a five hours class to receive public assistance benefits and she could not tolerate the prolonged sitting. (T. 319.) This statement by Nurse Pyatigorskaya is central to Plaintiff's argument that the ALJ erred in assessing the nurse's opinion because the ALJ did not provide for a specific sit/stand option in her RFC determination. Nurse Pyatigorskaya's notations do not contain any other functional limitations or opinions regarding Plaintiff's ability to perform activities such as walking, standing or sitting.

The ALJ afforded "reduced weight" to Nurse Pyatigorskaya's "opinions."  (T. 27.) The ALJ acknowledged that Nurse Pyatigorskaya was a treating non-acceptable medical source, and reasoned her opinions were not fully consistent with the medical evidence, her opinions were "not appropriate function-by-function assessments," and her opinions were not supported by an explanation.  (*Id.*)  The ALJ further stated that Nurse Pyatigorskaya's statement "may be consistent with sedentary work."  (*Id.*)

Plaintiff argues that although the ALJ provided "valid factors" in assessing Nurse Pyatigorskaya's opinion, it was "not permissible" for the ALJ to provide "inconsistent rationale" for rejecting Nurse Pyatigorskaya's opinion based on these factors and accepting Nurse Lalone's opinion.  (Dkt. No. 10 at 11-12 [Pl.'s Mem. of Law].)  Plaintiff's argument, although compelling, ultimately fails.

As stated herein, any error in affording "significant weight" to Nurse Lalone's observations was harmless because Nurse Lalone did not provide any functional limitations in her statement, or any other remarks in her statement, that were more restrictive than the ALJ's ultimate RFC determination.  Further, the ALJ did not rely on a lack of functional limitations as indication that Plaintiff had none, indeed, the ALJ limited Plaintiff to sedentary work.  Nurse Lalone's observations, that Plaintiff had "good results" with medication and a normal examination with pain on palpation of back, was consistent with other objective medical evidence in the record.

In assessing the opinion of Nurse Pyatigorskaya, the ALJ adhered to the Regulations and SSR 06-03p.  The ALJ acknowledged Nurse Pyatigorskaya was a treating source, however, she was a non-acceptable medical source.  The ALJ further reasoned that her statement was not consistent with the medical evidence.  (T. 27.)

Indeed, although Nurse Pyatigorskaya treated Plaintiff on a monthly basis, her treatment notations did not document clinical findings beyond muscle spasms throughout Plaintiff's spine. (T. 309-347.) Nurse Pyatigorskaya indicated Plaintiff responded well to physical therapy (T. 339, 341) and Plaintiff reported improved physical activity with therapy (T. 329). The nurse consistently noted pain medication allowed Plaintiff to maintain her social life and independence in activities of daily living. (T. 312, 315, 318, 321, 324, 327.) Plaintiff reported that without her pain medication she would not be able to sit more than fifteen minutes or stand long enough to do the dishes. (T. 321.)

Plaintiff maintains that the ALJ's assertion that Nurse Pyatigorskaya's opinion was inconsistent with the medical evidence was "not sufficient to save her findings" and the ALJ failed to specifically indicate what evidence she was relying on in making this determination. (Dkt. No. 10 at 12-13 [Pl.'s Mem. of Law].) Here, substantial evidence in the record supported the ALJ's determination to afford Nurse Pyatigorskaya's October opinion reduced weight and because the ALJ outlined such evidence in her determination, the ALJ's determination is upheld.

To be sure, the ALJ did not provide specific citation to the record in her discussion of what weight she afforded Nurse Pyatigorskaya's opinion. (T. 27.) However, elsewhere in her decision the ALJ outlined specific pain clinic notations and other objective medical evidence in the record which were inconsistent with the nurse's limitation. (T. 26); *see Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony

15

presented to him or have explained why he considered"). Therefore, contrary to Plaintiff's assertion, the ALJ's decision provided ample rationale to support her determination that Nurse Pyatigorskaya's opinion was inconsistent with medical evidence in the record.

Overall, the ALJ did not err in affording reduced weight to Nurse Pyatigorskaya's October statement. Under the Regulations, Nurse Pyatigorskaya was a non-acceptable medical source and as such the ALJ need not provide "good reason," but only need show that she had considered the nurse's opinion according to the appropriate factors. *See Atkinson v. Comm'r Soc. Sec.*, 5:16-CV-0809, 2017 WL 1288723, at * 7 (April 6, 2017). Here, the ALJ's decision outlined medical evidence in the record which supported her determination to afford the nurse's statement reduced weight. The medical evidence in the record, as outlined in the ALJ's determination and herein, indicated that Plaintiff's symptoms were well controlled with medication and improved after physical therapy. The evidence further indicated that medication and physical therapy allowed Plaintiff to perform her activities of daily living. Therefore, contrary to Plaintiff's assertion, because the ALJ did not err in her assessment of Nurse Pyatigorskaya's October statement, the ALJ's did not err in omitting her specific limitation in the RFC.

### B. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not fully credible. (T. 26.) In making her determination, the ALJ noted that Plaintiff received conservative treatment, such as pain medication and physical therapy. (*Id.*) The ALJ further relied on treatment notations indicating Plaintiff's condition was "stable" on medication and on unremarkable EMG and nerve conduction studies. (*Id.*) The ALJ also discussed Plaintiff's activities of daily living, testimony, medication, and other treatment. (*Id.*)

Plaintiff argues that the ALJ erred in her credibility determination because the ALJ improperly relied on Plaintiff's non-compliance with physical therapy, conservative treatment, and notation that her condition was "stable." (Dkt. No. 10 at 14-16 [Pl.'s Mem. of Law].)

The ALJ's credibility analysis was supported by substantial evidence in the record. Here, the ALJ properly noted that Plaintiff's complaints of disabling pain were undermined by her conservative treatment regimen. *See Perfield v. Colvin*, 563 F.App'x 839, 840 (2d Cir. 2013) (finding that evidence of "conservative treatment" regimen supported ALJ's credibility determination). As outlined herein, the treatment notations indicated Plaintiff's pain responded well to medication and physical therapy.

In her discussion of Nurse Lalone's statement, the ALJ noted that, according to the nurse, Plaintiff did not complete physical therapy and was discharged as a result. (T. 26.) Plaintiff argues that the ALJ should not have considered evidence of Plaintiff's non-compliance, because there was evidence Plaintiff ceased physical therapy due to

18

pain. (Dkt. No. 10 at 15 [Pl.'s Mem. of Law].) First, there is no indication from the ALJ's decision that she drew a negative inference from Plaintiff's cessation of physical therapy. (T. 26.) The ALJ appears to outline Nurse Lalone's notations. (*Id.*) Second, although Plaintiff did not complete her first session of physical therapy, Nurse Pyatigorskaya referred her to a new therapist. (T. 346.) The ALJ noted that Plaintiff did complete another session of physical therapy and was discharged because her problems listed were solved and her goals obtained. (T. 26.) The ALJ did not admonish Plaintiff for failure to comply with physical therapy. Here, in assessing Plaintiff's credibility, the ALJ properly outlined Plaintiff's treatment, including her unsuccessful and successful, sessions of physical therapy.

Further, the ALJ did not err in noting that Plaintiff's condition was described as "stable" by her providers. (T. 26.) To be sure, the term "stable" does not necessarily equate with "good." *See Kohler v. Astrue,* 546 F.3d 260, 268 (2d Cir. 2008) (citing, as an example of the ALJ's "tendency to overlook or mischaracterize relevant evidence," the ALJ's consistent interpretation of "reports that [the plaintiff's] condition has been 'stable' to mean that [the plaintiff's] condition has been good, when the term could mean only that her condition has not changed").

Here, there is no indication that the ALJ mischaracterized the term stable. In providing a summary of Plaintiff's treatment, the ALJ accurately noted that Plaintiff's treating sources described her back condition as "stable" on her medication regimen. (T. 26.) Treatment notations indicated that Plaintiff's pain was well controlled with medication and subsequent notations indicated Plaintiff was "stable" on her medication regime. On November 8, 2012, Plaintiff reported that her pain medication controlled her

19

pain well. (T. 345.) Subsequent notations from 2012 and 2013 indicated Plaintiff was "stable" on present medications. (T. 329, 331, 333, 3353, 337, 339, 341.) Although the term "stable" could mean that a plaintiff's symptoms were not getting better or worse, when read in context here, it is apparent that Plaintiff's symptoms of pain were controlled with medication and such control remained "stable" during treatment.

For the reasons stated here, the ALJ's credibility assessment was supported by substantial evidence in the record and the ALJ did not commit legal error in making her determination.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     August 14, 2017

*[signature: Bill Carter]*

William B. Mitchell Carter
U.S. Magistrate Judge